JONATHAN ETCHISON,
    *Plaintiff,*

-v-

UNIVERSITY OF TENNESSEE AT CHATTANOOGA,
    *Defendant.*

No. 1:12-cv-205

JURY DEMAND  Judge Collier
                     Judge Lee

## COMPLAINT

### I. Nature of the Case:

1. Plaintiff seeks redress for defendant's violation of plaintiff's rights guaranteed under Title VII of the Civil Rights Act of 1964 as amended ("Tit. VII"), 42 U.S.C. §§ 2000e-2(a), 2000e-3(a); the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. § 621, *et seq.*; and the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. § 12112, *et seq.*; and for redress of claims under TENN. CODE ANN. § 50-1-102 and the Tennessee common law torts of promissory fraud, intentional and negligent misrepresentation, and breach of contract.

### II. Jurisdiction & Venue:

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 over the federal question claims herein. Plaintiff asserts this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) since the state claims arise from the same controversy.

3. This Court is the proper venue pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), for the defendant lies in the City of Chattanooga, and all acts averred herein occurred on the property of the defendant.

### III. Conditions Precedent:

~ 1 ~

4. Plaintiff filed a timely charge of discrimination against the defendant with the Equal Opportunity Commission ("EEOC"). On April 24, 2012, plaintiff received from the EEOC a notice of right to bring a private action.

**IV. The Parties:**

5. Plaintiff is a resident of Hamilton County, Tennessee and was formerly employed by the defendant.

6. Defendant, formerly known as University of Chattanooga, merged with the land-grant University of Tennessee in 1969, which was established under the laws of the State of Tennessee. Defendant remains merged in what is known as the Tennessee University System. Defendant maintains its own organizational structure, and policies and procedures in the hiring and firing of employees.

**V. Facts:**

7. On May 18, 2009, Philip B. Oldham, Provost and Vice Chancellor for Academic Affairs for the defendant, offered plaintiff employment as Activities Coordinator ("coordinator") in the Upward Bound Program ("program") at the defendant's campus. The program is a program as defined pursuant to 42 U.S.C. § 2000d-4a. The coordinator position included a salary of $2,166.67 per month, and medical and life insurance. Defendant required plaintiff to participate in a "retirement system" in addition to social security. The employment was to begin on May 19, 2009 as an "exempt salaried" employee of the defendant.

8. The offer of employment was contingent on plaintiff's submission of a completed conflict of interest form and the defendant's receipt of plaintiff's official grade transcript. Plaintiff met these two contingencies. Nowhere on the offer of employment from the defendant was there a requirement that plaintiff complete a 6 month probationary employee term.

9. In August 12, 2009, plaintiff had surgery on one of his feet, and learned that he had the condition rheumatoid arthritis ("RA"). Consequently, plaintiff is a disabled person within the meaning of the Americans with Disabilities Act. Notwithstanding the condition, plaintiff was able to continue to perform his duties for the defendant.

10. Plaintiff notified Dr. Annie Jones ("Jones") his supervisor and the director of the program that he had RA. Thereafter, Jones began harassing plaintiff on a daily basis, making comments to and about plaintiff, such as: "Oh my Lord, I've hired a disabled person!" Jones continued to question plaintiff about his RA, and made loud outbursts in front of other employees about plaintiff's RA and his status as a "disabled" person. Jones intimidated plaintiff by threatening to withhold from plaintiff training or to allow plaintiff to attend a conference designed to train plaintiff in his job function. Jones demanded plaintiff obtain and provide to her his confidential medical records so she could monitor plaintiff's ability to perform his duties.

11. Jones approached Dan Webb ("Webb"), Human Resources Director for the defendant and discussed plaintiff's RA with Webb.

12. On September 16, 2009, plaintiff sought assistance from Webb and Jones' supervisor, Dr. Jocelyn Sanders ("Sanders") in an attempt to stop Jones' conduct.

13. Neither anyone from the Human Resources office nor Sanders took any action to address plaintiff's complaint about Jones.

14. Shortly after plaintiff made his complaint Jones left the defendant's employment for a position with Columbia Community College in Franklin, Tennessee.

15. Webb then changed the conditions of plaintiff's employment from salaried to hourly. As a result, plaintiff saw a reduction in his wages and lost all the benefits offered by the

~ 3 ~

defendant in the May 18, 2009 offer that plaintiff accepted and enjoyed during his first 6-months of employment.

16. Webb assured plaintiff that the change was only temporary, and as soon as the defendant hired another director to replace Jones, plaintiff would revert to his salaried employee status.

17. During the time from Jones' departure until the defendant hired a replacement director, plaintiff performed the Jones' former duties of director in addition to plaintiff's original duties of coordinator as a hourly employee without benefits and with the reduction in wages.

18. Plaintiff inquired of defendant about applying for the vacant director position through Sandy Cole at the defendant's Center for Community Career Education, but Cole discouraged plaintiff from applying. Plaintiff continued to work as a hourly employee without benefits and reduced wages while continuing to perform the functions of director for the program.

19. In May 2010, defendant hired black female Belinda Brownlee to replace Jones.

20. Defendant advertised an open position for the very same coordinator position offered to plaintiff on May 18, 2009 and accepted by plaintiff on May 19, 2009. The advertisement set forth the defendant was replacing plaintiff. The position had the very same benefits, and was a salaried position.

21. Plaintiff applied for the coordinator position with the defendant.

22. Defendant hired a black male, 22 years plaintiff's junior, for the coordinator position.

23. On September 28, 2010, defendant terminated plaintiff.

Case 1:12-cv-00205-HSM-SKL   Document 1   Filed 06/25/12   Page 4 of 8   PageID #: 4

24. Plaintiff was qualified to perform the duties of coordinator as evidenced by his continued work as coordinator.

25. Plaintiff was qualified to perform the duties of director, as evidence by his work performing the functions as director until defendant hired Brownlee.

26. There were no bona-fide occupational qualifications that would have prevented plaintiff from performing the functions of coordinator and director.

27. Although plaintiff had to recover from his foot surgery, and suffered from rheumatoid arthritis, defendant's accommodation for plaintiff's disability would not have resulted in decreased efficiency for the defendant.

28. Defendant had a policy and practice to terminate employees only for good cause, and contrary to that policy, defendant changed the terms and conditions of plaintiff's employment and eventually terminated plaintiff when defendant learned plaintiff had a disability. Defendant hired a younger, non-disabled person as coordinator and a non-disabled person for the director position.

29. Defendant subjected plaintiff to retaliation by constructive discharge, change of terms and conditions of his employment, and finally an actual discharge after plaintiff made a complaint to Webb and Sanders about the conduct of Jones.

30. Defendant induced plaintiff to accept the coordinator position, and induced plaintiff to continue as an hourly employee by false representations, false advertising, and false pretenses. Plaintiff reasonably relied upon these representations, advertisements, and pretenses to his detriment while plaintiff performed the functions of coordinator and performed the duties of director when he could have looked for other employment.

~ 5 ~

Case 1:12-cv-00205-HSM-SKL   Document 1   Filed 06/25/12   Page 5 of 8   PageID #: 5

30.     Defendant breached the employment contract with plaintiff when, despite the recommendation of Jones, defendant suddenly changed the terms and conditions of employment originally offered and accepted by plaintiff.

31.     As a direct and proximate result of the acts and omission of the defendant, plaintiff suffered lost wages, loss of benefits, suffered mental anguish and emotional distress, loss of enjoyment of life, damage to his reputation and earning capacity due to the employment termination on his work record.

## VI. Causes of Action:

32.     Plaintiff incorporates ¶¶ 7-31.

33.     Such acts and omissions constitute:

    [a]     Sex discrimination in violation of 42 U.S.C. § 2000e-2;

    [b]     Age discrimination in violation of 29 U.S.C. § 621;

    [c]     Discrimination in violation of 42 U.S.C. § 2000e-3;

    [d]     Discrimination in violation of 42 U.S.C. § 12112;

    [e]     Violation of TENN. CODE ANN. § 50-1-102;

    Violation of the common law of Tennessee, specifically:

    [f]     promissory fraud; [g] intentional; [h] negligent misrepresentation; and [i] breach of contract.

34.     The defendant's actions and omissions were intentional, were specifically targeted to dupe plaintiff into working for defendant while defendant found non-disabled persons to fill his former position as coordinator and the open director position; found a younger person, and a female to fill the positions plaintiff was not only qualified to perform, but actually performed, and all the while with the intent to discriminate against plaintiff. As a result of defendant's

~ 6 ~
Case 1:12-cv-00205-HSM-SKL   Document 1   Filed 06/25/12   Page 6 of 8   PageID #: 6

misconduct, defendant enjoyed the benefit of plaintiff's labor and skills without having to pay plaintiff and provide the benefits offered and accepted by plaintiff all while defendant actively looked for other younger, non-disabled, and at least in one instance, a female, employees to plaintiff's detriment and with no intention to follow through with the many promises and assurances that defendant would return plaintiff to his former coordinator position.

### VII. Prayer for Relief:

a. Trial by jury.

b. Declare defendant's actions in violation of the Civil Rights Act of 1964, Age Discrimination Act, and the Americans with Disabilities Act.

c. Enjoin defendant from further such discriminatory actions and omissions.

d. Award plaintiff back pay, back benefits, increments, financial adjustments and seniority.

e. Reinstate plaintiff with reasonable accommodations or to award plaintiff front pay.

f. Award plaintiff compensatory damages for all losses suffered, to include mental distress as allowed by a jury.

g. Allow attorneys fees pursuant to 42 U.S.C. § 1988 and Tennessee law.

h. Award interest as this Court deems fit, proper, and equitable.

Respectfully submitted,

***Plaintiff verification and Rule 11 signature on next page***

By: _____
**ROBIN RUBEN FLORES**
TENN BPR #20751
GA STATE BAR #200745
Counsel for Plaintiff
4110-A Brainerd Road
Chattanooga, TN 37411
423 / 267-1575  fax 267-2703
robinflores@comcast.net

## VERIFICATION

STATE OF TENNESSEE  )
HAMILTON COUNTY     )

I, Jonathan Etchison, first being duly sworn, do hereby make solemn oath that the facts contained in this Complaint are true to the best of my knowledge, information, and belief.

This the __19__ day of __June__, 2012

_____
JONATHAN ETCHISON

SWORN TO BEFORE ME THIS __19__
DAY OF __June__, 2012

_____
Notary Public
My commission expires July 24, 2014

~ 8 ~